Thank you Judge. May I please record James Kuhn on behalf of the plaintiff's appellant, and Donna Beavers, I would like to reserve five minutes if I can do that. This is judicial review of a social security denial of benefits from the Commissioner. The ALJ's decision is what is at issue since this court reviews de novo. This is a case in which the medical opinion treatment by the ALJ is at issue. There were seven medical opinions that gave global assessments of functioning, and the ALJ addressed four of those and ignored three of those. To ignore something is to reject it under this court's precedent. The ALJ therefore erred in failing to give some kind of a reason, in fact, specific and legitimate reasons for rejecting the ALJ. Assume for a moment that the ALJ properly rejected, I think it's Dr. Geiger's, gee, I don't know how to pronounce it, but I'm saying it's Geiger, that GAF assessment, which was 38, because they did give some reasons with respect to rejecting that. If that was correct, or if that was supported by the record, if you will, why isn't the ALJ entitled to reject at least assessments that are at that level or lower from other people? I think there are two reasons. One, he would be entitled to reject, but did not, simply ignored. I guess I'm asking is that an implicit rejection? In other words, if the ALJ said 38 is not an appropriate GAF assessment, and I reject it, in fact, if the ALJ said, separate issue, I reject anything under 50, but assuming that he had good reasons in the record, or could put reasons in the record for rejecting the 38, doesn't that at least knock out all the ones under 38, even if he doesn't address the others specifically? That's also a count of time. Geiger was January 3rd of 2006. There were two others in January under 50. There was one in July of 25, and there was one in December of 25. So it's the temporal difference that would make that not a rejection of the others? That is one thing. I think we do need to hold the ALJ to its rational process in order to make this a reviewable decision. I think that's why we have the rules we do, that you've got to give reasons for doing things. And he might have rejected Geiger's 38 because Geiger was looking out the window or had the wrong this or that, but someone else could have been the next day, the same day. The reason he rejected it, as I read the record, and this gets to my second question, he didn't find your client credible and said, and I had a little bit of trouble with this on the other side, all these reports are based on the self-reporting of the claimant. It's hard to know how you do GAFs except by self-reporting of the claimant, at least in large part. But I didn't find your client credible, he says. And therefore, since all the GAFs are derived, at least in part, from your client's reporting of situations, I don't find them credible. It doesn't say that. I'm just trying to find out whether I can imply that from what was said. I don't think so. I think all you can get from the ALJ is what he said, considering the overall evidence any GAF under 30 is simply unsustainable. He's got to give specific legitimate reasons. That's a very general reason. Perhaps I'm thinking of the wrong doctors, but I understand. You're talking about Parsons, Rose, and Bernkram? Bernkram. Okay, Bernkram. The way I understood it, he rejected these because their evaluations occurred during the Voluntary Psychiatric Commission for Suicide Ideation in 2006. In other words, this was an exception. This was not the normal pattern. And that is found at SER 146, 655, 840 through 841. But if I'm correct, he did give a reason why those opinions were rejected. I don't believe the ALJ gave those reasons, Your Honor. Perhaps I'm mistaken. Perhaps I am, too. But the ALJ's opinion itself does not, on my multiple readings, ever mention those three doctors. Let's for a moment assume that there is no such reference. There is testimony in the record of the reasons why that might be. Is it your position that our case law and the regulations of the commissioner require the ALJ to expressly state, with respect to every doctor, why their testimony is not evaluated expressly? That is true. I think that's quite clear. There's certainly case law that says the ALJ not deal with every piece of evidence. I understand that. And the trial court and the magistrate here did say there is no rule out here in the circuit that requires the ALJ to address every doctor. There was no citation that went with that. I believe that's an incorrect statement of the law. You look at, of course, Lester and all the cases following it. Doctor opinions, medical opinions, have to be addressed. And these are not casual opinions. These are decisions, these are opinions given on admission and on discharge of someone who's on a psychiatric hold or considered for a psychiatric hold and is held for 25 days in that year. That's not an insignificant evaluation. And those are purposeful evaluations. They're not just for purposes of assessing disability or social security. These are not consultants. They're not records review. These are people seeing the client, knowing about the client's history in the facility during, for instance, the eight days in July or the 15 days in December. So these are people I would argue that they should be treated as treating doctors, in fact. Well, assuming they are treating doctors and they come up with these GAFs, I think our case law says that a GAF is not conclusive on the issue of disability. Where do we go from there? Again, the ALJ didn't say that. That wasn't the ALJ's reasoning. The ALJ's reasoning was, I believe these GAFs are pivotal. I'm going to cite the 2004, 58, and 55. And as for all those under 50, I don't agree with that. So in this case, your view is that since this ALJ was basing decisions on GAFs and improperly or never treated the three, never discussed these three, we need to send it back to the ALJ to figure this out. I think so. I mean, this ALJ looked at those GAFs, took them seriously as assessors, and felt the need to address them, at least the ones he did address. So we'd be in a different situation if the ALJ had said, I really don't trust GAFs as a way of assessing disability. If the ALJ had given a reason for that, if there were. Because we do have cases that say GAFs are not necessarily conclusive on disability. And, of course, necessarily conclusive is different than must be considered or should be considered. Or relevant. Right. And we're not talking about here a situation where we have to show that Rose, Parsons, and Bernkranth absolutely dictate the finding of disability. Now we're getting into, of course, what's harmless error. Right. So what relief do you seek? We are seeking, we would seek remand for payment. These were improperly rejected. They should be found to be credible, to be binding on remand. And if they are, if you read what the GAFs say, for anything below 50, in fact, unable to keep a job, seriously impaired in all areas, et cetera. Well, that's why I asked the question. Are you seeking remand so that the ALJ can address these three? That's, of course, our second position. Yeah, well, isn't that the appropriate relief here? In other words, what you said is there was evidence in the record that he never addressed. We think that evidence would have compelled a different conclusion, but we don't know because he never addressed it. So wasn't the appropriate relief to send it back to the ALJ to address these? Well, under the various cases that we cite, it's a discretionary decision with this Court, whether you send it back for payment or not. In practice, the Court weighs the various factors, the various evidence. Let's say that in the interest of justice, we decide that we're going to weigh the whole thing. When you look at the cumulative testimony of her actual lifestyle, what she says versus what she does, for example, being with her husband for eight days on the trucking trip, she says she can't read, and yet she is researching disorders. She reads books to somebody. You know you don't want to talk about all this other evidence. The reality is you've got a weighing. Our case law seems not to say that the GAF is not conclusive. It's one of the factors. We have to decide whether there's substantial evidence backing up what the ALJ did. You have pointed out that these three doctors that the ALJ did not really address. You said that they did not address what they said during this suicidal ideation. I gather you take it that is your key point. If that was done wrong, notwithstanding everything else, that we should turn that around and send it back or reverse it. Number one, it's legal error. This court, of course, does not look at the whole record and say, is there substantial evidence? What do we think? This court looks at, depending on the assignments of error, but in this case, was there legal error? Does harmless error apply? Two, was it harmless? And, of course, the harmless error screen, you have to go through that. And then you've got to look at stout, which says, okay, taking this evidence as true, could any reasonable ALJ reach a different decision? And I think, you know, if you take that standard of review, you've got to say, of course. A judge could. An ALJ could look at Rose, Bernkrant, and Parsons and say, well, yeah, I think this person is disabled. We're talking, again, you look at time. We're focusing on the year 2006 because we've got January, July, and December, 25 days of hospitalization. The other side, of course, is going to cite Malinga. And, quite frankly, there is some issue in the circuit of battle. What is harmless error when you've got stout and Malinga? I would have some difficulty just, and maybe you could address this, remanding for payment in a case where, from your perspective, the three critical evaluations occurred during a period of hospitalization for difficulty. That may not represent the petitioner's overall ability to work. It may not from Spence's turn, but I do suggest that. It may be relevant to, I think I'm agreeing with your point, that it may be relevant to deciding the case that the ALJ made a mistake. But I have difficulties thinking that we, in light of all the stuff that Judge Smith talked about, that we can look at those three and say, oh, my gosh, this is such a clear case. We ought to remand for payment. Obviously much more difficult, and it's discretionary, and I notice I've got only a few minutes. Okay. Thank you. Okay. We'll hear from the commissioner. By the way, we compliment counsel for passing that. If you do. Good morning, Your Honors. Gerald Hill for the commissioner. May it please the Court. The ALJ actually did consider the evidence of the hospitalizations during the year 2006. As the Court recognized, expressly addressed Dr. Geiger's opinions, named Dr. Geiger and quoted his GAS score. But then later in the decision, and this is at excerpts of record 43 or supplemental excerpts of record 31, ALJ discussed that the plaintiff was again hospitalized in July and December 2006 because of her allegations of suicidal ideation and that she was, expressly states that she was given very low GAS scores and that she was discharged a few days later and her husband gave most of the history of those, during those hospital admissions. And then the ALJ expressly says overall credibility regarding allegations of severity is at issue. So I think there's no question that the ALJ was aware. Well, no, I don't think there's any question the ALJ was aware of them. And the ALJ mentioned in passing that they occurred. But if credited, they would seem to give some force to the petitioner's case here. And the ALJ never treats them, never says, I don't credit them because they occurred during a period of hospitalization or I don't credit them because, for any number of reasons. The ALJ just notes that they occurred and doesn't treat them. It doesn't even talk about the numbers, just that they were low. So why shouldn't we send it back to the ALJ and say, here's three pieces of evidence that seem to support the other side of this and you never treated them? Examining physicians, tell us what you think. Because we can discern the ALJ's meaning and reasons from the decision. So he's found the claimant and her husband not credible. He's noted the low GAS scores and he's rejected GAS scores below 50. On what basis did he do that? I know he says, I find anything below 50 not. He rejected Dr. Wheatman and I believe Dr. Romero's because they were based on the claimant's allegations and he had found the claimant's statements to be, in fact, credible. And then he didn't make that express finding with the other GAS scores from July and December 2006. But he did note that they were based on her allegations and the allegations of her husband. And then he noted that overall questions of credibility are at issue in the case and his credibility findings were, of course, that the claimant and her husband were not credible. Let's assume for a moment that opposing counsel is correct that as a matter of our case law that he should have said something about these three doctors. He also seems to indicate that the harmless error standard applies. Do you agree? Well, I don't concede the error, but. No, I understand. If there is error that harmless error applies. If there is error, the court will always be required to do analysis of harmless error. And for our purposes, when and if we have took that approach, would we look at the totality of all of the evidence, weigh it, and, in fact, de novo? Is that what we do? Or is there some deference given to the ALGA's decisions on some aspect of the case? Well, the Supreme Court has said that the analysis, on review of an administrative finding is like the harmless error analysis in any civil case. The court has to consider the totality of the evidence, and I guess an administrative review case has to consider the respective role of the ALGA and the court, and so should be mindful of the findings. The court should be mindful of the findings that the ALGA did make in the case. When evidence is not treated, and we do harmless error review as here, what do we assume about that evidence? Do we assume that these GAF scores are accurate or inaccurate for purposes of our harmless error review? I think we look at first and foremost at the ALGA's decision. I think there's a difference between not treated and maybe not sufficiently treated or a failure to give reasons. I mean, the ALGA considered them, cited them, mentioned them, and I guess the dispute, you know, we're suing for this discussion that didn't give a sufficient discussion of them with reasons. So we do need to look at the ALGA's reasons for his other findings, and cases that direct the court to that are the Molina case and also the Ludwig case, which I believe is 681F31047, and these cases that interpret the Shinseki v. Sanders case of the Supreme Court in 2009. So it is a totality of the circumstances. I don't think it's – I wouldn't call it a de novo review, but we don't simply – the court should not simply credit evidence that was, if it finds an error, erroneously disregarded or rejected, but must take account of all the circumstances. And I guess my difficulty is I don't know whether we're supposed to say we don't find these GAFs very persuasive or whether we're supposed to say these GAFs were not accurate. I don't know what we're supposed to do with them in the harmless error review process. Well, I don't think even the ALGA is saying that the GAFs aren't accurate. I think he's saying that the psychological issues in the case were erratic. I think his words were. And so when she presents with suicidal ideation with or without plan, it's probably not surprising that she has a little GAF score. But these GAF scores, I think, as the court alluded to in my opponent's argument, are not medical source statements or RFC assessments by doctors. So I don't think it's surprising to be voluntarily admitted and have a low GAF score. And so I think the point was made it may not reflect her functioning over time, and I think the ALGA reasonably found that it's not. In all these cases, of course, you've got the five-step review. Here there seems to be a problem at step three and at step five. The GAF score seems to apply to only one of those. If the ALGA properly, arguendo, decided that there was a problem at step three and the issue you're raising is at step five, if there's a problem at step three, it's fatal to the claim, is that sufficient for us to affirm the decision of the ALGA? Were we of a mind to do that?  What I mean is, let's just say for a moment that there was a problem at step three. You would never have to get to step five, right? No, I mean, if the ALGAs had a willingness to leave regarded evidence that conclusively established the disability is effective. My point is that in order to get payment, you've got to satisfy all five points, okay? So here there is allegedly a problem with three and five. My question is, if the evidence is such that the petitioner's case fails either at step three or at step five, does that affect whether there's harmless error, for example, because the case can't be successful in light of the fact that at least one of those fails? Well, the ALGA, this particular case, can't fail fatally at step three because the ALGA has found that she has a severe mental impairment. Okay. So it's proceeded to go on to step five. Okay. So it's all based on five from your perspective? Yes. Okay. Yes, this is step five case. Counsel, you referred to Supreme Court decision that we can look at the totality of the evidence for harmless error. Did you cite that in your brief? Yes. Okay. Would you like me to? Yeah. All right. Thank you. Thank you. You're welcome. So this is a case of conflicting medical evidence. Dr. Green's opinion is in conflict with Dr. Reed's release of the claimant to work, and Mr. Lautenbaus, I'm sure I'm pronouncing that incorrectly, but he's the physician's assistant whose CT and MRI images were unremarkable and did not explain the claimant's pain allegations, and he encourages the claimant to lead an active lifestyle and not to consider herself severely disabled. So the point is that not that one is necessarily right over the other. That's not for us to determine, but the ALJ reasonably resolved the conflict in the evidence, and his decision shows that he considered all the evidence. If the court finds that the ALJ somehow erred in an articulating and giving reasons or an articulation requirement, then the court should follow the Supreme Court's harmless error analysis and consider all the findings the ALJ made, especially the credibility findings which are paramount in this case, given the dearth of objective medical evidence. And the commissioner asks that the court affirm the ALJ's decision. If there are no further questions, I'll have a seat. Thank you, counsel. We'll hear rebuttal. Thank you, Judge. Just to address a couple of the last points. First, the conflict in the evidence counsel cites is an orthopedic. We're not relying on the orthopedic motive, so much as we're relying on the mental issues. Looking at the harmless error standards, I want to make sure we have it clear that we're not talking about sort of the universal camera kind of whole record thing where the appellant says there's no substantial evidence to support what happened below, and then the universal camera says whole record. Okay. That's not what we're doing here. We're saying there is legal error, and now the question is, I think that's quite clear. There is legal error here. The question is, is it harmful? And the standard is whether a reasonable finder of fact could have arrived at any conclusion but this one. Right. The court cannot consider the error unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination. That's what Stout says. Then Molina says, well, we cite that from Stout, but you can't just pluck it out and make that into a per se harmful error rule. We agree with that. And it's not, by its own terms, it's not per se, but it puts a pretty heavy thumb on the scale towards saying things are harmful. Then you get Shinseki, and Molina runs all these cases and demonstrates and in fact says that the formulation you use to describe harmful error depends on the context, depends on the facts, depends on what you're doing here. They cite the Enquist case, the Oregon Department of Agriculture case, where they showed that it was probable that it would make a difference. See, that's one place I'm having some difficulty here is I think we know this ALJ, if asked to confront these three GAFs, would discredit them, because he discredited every other one that he looked at. And there was a reason to discredit them, perhaps, because they were taken during the hospitalization. Does that point in our harmless error analysis? I don't think it does. I mean, sure, the ALJ said, what, I reject everything under 50. Why? Because the whole record is not the same. That's not a specific and legitimate finding. It's not specific at all. So that doesn't qualify. But then the question is, so are we going to just look at this ALJ and say, well, we think he would have decided this way anyway. I don't think you can do that in any administrative law context. The ALJ has to say what it is. These are different pieces of evidence. The ALJ can't say, I just believe every piece of evidence, whatever it may be, that tends to prove X, because I don't believe X. Claimants say X, I don't believe claimant, so X is not true. So if this doctor said X, then it must be wrong. That's not administrative review. He's got to look at that doctor's opinion and say, this is why, from that doctor's point of view, saying X is no good. There's no evidence for X, whatever it is. Forgive me. Maybe I misunderstand the Supreme Court on this, but I thought what we would be doing is to say, if we fully credit the testimony of these three doctors when there was a suicidal ideation and we factor it into the rest of the evidence, if we conclude that no reasonable ALJ could come out differently than this one did, then we would affirm the ALJ. Isn't that correct? I think that's true. I haven't lost my time. Okay. Any other questions? Nope. Nothing. Okay. Thank you both for your argument. Appreciate it. Case of Beaver v. The Commissioner is submitted.
judges: Alarcon, Smith, Hurwitz